Commonwealth *v.* Butler, Appellant.

WRIGHT, P. J., filed a dissenting opinion, in which WATKINS and HANNUM, JJ., joined.

Argued September 13, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Mervyn R. Turk*, Assistant Public Defender, for appellant.

*Ralph B. D'Iorio*, Assistant District Attorney, with him *Vram S. Nedurian*, Assistant District Attorney, *William R. Toal*, First Assistant District Attorney, and *Stephen J. McEwen, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY SPAULDING, J., November 14, 1968:

On March 29, 1966, Lonnie Butler, appellant, was tried and convicted by a jury on two felony indictments

charging robbery by assault, aggravated assault and battery and assault and battery with intent to kill, and two misdemeanor indictments charging violations of the Uniform Firearms Act and wantonly discharging a weapon. His initial sentence of a $500 fine and imprisonment of 2½ to 5 years was vacated to permit him to take polygraph and "truth serum" tests. On May 5, 1967, he was resentenced to pay the fine and serve 2 to 4 years imprisonment and now appeals.

Appellant's convictions stem from an alleged robbery and shooting of one William Brown on January 23, 1965, in the City of Chester. At trial, the Commonwealth presented Brown and an eyewitness to the incident. Brown testified that appellant and an accomplice accosted him, forced him into a car, and took money from his wallet. Appellant allegedly shot Brown in the back after Brown had jumped from the car and had run about 3 yards in an attempt to escape. Brown stated that he had ample opportunity to see and identify his assailant and appellant acknowledged that he had known Brown for more than 20 years. Brown's testimony was supported by the eyewitness, a Mrs. Johnson, who testified to having seen appellant force Brown into the car at gunpoint. Appellant testified on his own behalf and denied that he participated in the robbery and shooting.

The State Trooper who had administered the polygraph examination indicated to the court that in his opinion appellant was not telling the truth about his innocence. In two sodium amytal tests, appellant stated that he was not involved in the robbery, that in fact no robbery had taken place, that Brown had been shot by a girlfriend, and appellant had been accused of the shooting because of hostility resulting from heavy gambling losses Brown had sustained from appellant a few years before the shooting. Both doctors

who administered the tests indicated that in their opinion appellant was probably telling the truth. At a hearing on January 12, 1968, the lower court refused to grant a new trial on the basis of the results of the sodium amytal tests.

In asking for a reversal, appellant alleges: the trial court erred in failing to charge the jury on the weight to be given to the identification testimony; appellant was denied the right to a fair trial because of ineffectiveness of counsel; the trial court erred in failing to grant a new trial on the basis of the "truth serum" tests; and, the trial court erred in permitting appellant to be cross-examined about his prior criminal record.

Both Brown and the eyewitness were positive in their identification of appellant. Mrs. Johnson testified that appellant was standing only 5 to 10 feet from her and was under a street light. Under these circumstances, identification testimony need not be received with caution and the failure to give cautionary instructions is not error. *Commonwealth v. Saunders,* 386 Pa. 149, 125 A. 2d 442 (1956). Moreover, appellant's counsel failed to offer a point for charge or to take exception to the charge. Under these circumstances appellant may not complain of inadequacy of the charge. *Commonwealth v. Haas,* 198 Pa. Superior Ct. 227, 181 A. 2d 908 (1962).

Appellant has failed to meet the heavy burden required to establish ineffective assistance of counsel. None of the alleged tactical errors offered to show the incompetency of trial counsel support the conclusion that the course chosen by trial counsel was without any reasonable basis designed to advance appellant's interests. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A. 2d 349 (1967). The only alleged error by counsel of any substance, the failure to ob-

ject to cross-examination on appellant's prior criminal record, was not prejudicial.[1]

It was not error for the lower court to refuse to grant a new trial as a result of the "truth serum" tests. Although both attending physicians expressed the opinion that appellant was probably telling the truth, these conclusions were contradicted by the administrator of the polygraph test. Both doctors indicated that sodium amytal tests were not uniformly accurate and no evidence was offered to show the reliability of examination while under the influence of the drug. The results of polygraph examinations have been held not to be judicially acceptable in Pennsylvania because of unreliability. *Commonwealth v. Saunders, supra.* Similar disposition applies to "truth serum" tests in the absence of any showing of reliability. Every jurisdiction considering the admissibility of such tests has rejected them. *Annot.,* 23 A.L.R. 2d 1306 (1952). At the very least, the results of the "truth serum" tests did not require the lower court to grant a new trial in the interest of justice.

The most serious allegation of trial error is that the District Attorney was permitted to cross-examine appellant about his prior criminal record in violation of the Act of March 15, 1911, P. L. 20, 19 P.S. §711.[2] This Act was passed to curb prosecutory abuses in the

---

[1] See note 2, *infra.*

[2] Appellant's contention on this question is properly before the Court. Although there are suggestions to the contrary, see *Commonwealth v. Comer,* 167 Pa. Superior Ct. 537, 76 A. 2d 233 (1950), the Supreme Court has indicated that violations of the Act of 1911 are of a fundamental nature, and may be considered although not properly raised by the parties. *Commonwealth v. Davis,* 396 Pa. 158, 150 A. 2d 863 (1959). In any event, although counsel did not object to the questioning, appellant himself objected and precipitated the ruling of the lower court that the questioning was permissible.

use of a defendant's prior criminal record for impeachment purposes. It provides: "Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,

One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation . . . ." Appellant contends that cross-examination as to several alleged weapons offenses was prohibited by the 1911 Act.[3] We agree.

The first limitation of the Act is that the Commonwealth may not cross-examine a defendant as to his prior convictions for impeachment purposes unless the defendant himself has placed his good character and

---

[3] The cross-examination of appellant was as follows: "Q. Have you ever been convicted of using a gun? A. Been convicted of using a gun? Q. Yes. A. Yes, I have. Q. How many times? A. I have been convicted once. Q. Was that July, 1962, carrying a deadly weapon? A. Yes, I was. Q. How about May 11, '63, wantonly pointing a deadly weapon? A. You are talking about the same charge. . . . Q. Well, that was in Philadelphia, wasn't it? A. Yes, it was. Q. Have you ever been in Kankakee, Illinois? A. Kankakee, Illinois? Q. Kankakee, Illinois. A. Yes. Q. Have you ever been there? A. Yes, I have. Q. 1951, June 19? A. Yes, I was. Q. Violation of firearms act? A. No, sir, I wasn't; I was there, I had an accident in my car under someone else's name, and I had to find out did that car belong to me. There was no gun involved in it. . . . Q. And there was no violation of firearms act in Kankakee, Illinois? A. No sir, it wasn't. Q. How about the violation of Uniform Firearms Act in Camden, New Jersey, January of '58? A. No, sir. Q. Somebody else? A. It wasn't me."

reputation in issue. On direct examination appellant was asked: "Q. Now at the time in January of 1965, were you on parole? A. Yes." Appellant argues that the line of questioning disclosing that he was on parole at the time of the alleged robbery does not place his character in issue. We hold otherwise. When a defendant testifies on direct examination that he has been convicted of a felony, he has placed his character in issue and the Act of 1911 does not prohibit cross-examination as to convictions for other offenses. *Commonwealth v. Farley*, 168 Pa. Superior Ct. 204, 77 A. 2d 881 (1951); *Commonwealth v. Church*, 212 Pa. Superior Ct. 344, 242 A. 2d 921 (1968). *Commonwealth v. Davis, supra,* note 2. If direct testimony to a prior conviction is considered as having placed character and reputation in issue, it is difficult to conceive how direct testimony that the defendant is on parole can do otherwise. A statement by a defendant that he is on parole implies that he has been previously convicted. We hold that appellant placed his character in issue.

However, the bare fact that a defendant has put his character in issue does not authorize the Commonwealth to expose on cross-examination every blemish on the defendant's prior record. The Act of 1911 limits cross-examination for the purpose of impeaching credibility and a defendant may be examined on only those facets of his record which are legally relevant to the issue of credibility. A defendant's credibility may be impeached on cross-examination only by questioning about prior convictions.[4] The Act of 1911 does not

---

[4] Not all convictions may be brought out on cross-examination. When the defendant has put his character in issue, the Act of 1911 permits cross-examination only as to convictions for felonies, misdemeanors in the nature of crimen falsi, and crimes similar in nature to those charged in the indictment. *Commonwealth v. Quaranta*, 295 Pa. 264, 145 A. 89 (1928); *Commonwealth v. Wiswesser*, 124 Pa. Superior Ct. 251, 188 A. 604 (1936); *Common-*

provide legal authority for inquiry into arrests, indictments or charges not resulting in conviction. *Commonwealth v. Quaranta, supra,* note 4. *Commonwealth v. Wiswesser, supra,* note 4; *Commonwealth v. Socci,* 177 Pa. Superior Ct. 426, 110 A. 2d 862 (1955).

The threat of possible prejudice to a defendant resulting from the use of prior convictions as impeachment evidence has often been explored and a balance has been struck in favor of the use of convictions because of the need to place material evidence bearing on credibility before the jury. *Commonwealth v. McIntyre, supra,* note 4. However, where the impeaching evidence is an arrest or otherwise falls short of being a conviction the risk of prejudice has been held to greatly outweigh whatever slight value the evidence may have for impeachment purposes. *Commonwealth v. Arcurio,* 92 Pa. Superior Ct. 404 (1927); *Commonwealth v. Jones,* 355 Pa. 594, 50 A. 2d 342 (1947).

In the instant case, the District Attorney's questions regarding the alleged Kankakee and Camden offenses focused upon whether appellant *had committed any violation* of the Uniform Firearms Act in these two cities. Appellant was questioned about "violations," not convictions. His denials indicate that he was never even arrested or charged with these offenses.

Appellant had no effective means other than his naked denials of involvement to overcome the suggestion raised by the cross-questioning that he did indeed commit the offenses in Kankakee and Camden. These

_wealth v. Hurt,_ 163 Pa. Superior Ct. 232, 60 A. 2d 828 (1948). *Cf., Commonwealth v. Butler,* 405 Pa. 36, 173 A. 2d 468 (1961); *Commonwealth v. McIntyre,* 417 Pa. 415, 208 A. 2d 257 (1965). Appellant was tried on four indictments, two of which charged him with weapons violation misdemeanors. The Philadelphia weapons convictions and the alleged Kankakee and Camden violations used to impeach appellant are neither felonies nor misdemeanors in the nature of crimen falsi.

denials were never controverted by introduction of a record of convictions. Moreover, the danger of prejudice could not but have been aggravated by the lower court's failure to caution the jury that convictions, and only convictions, were relevant to appellant's credibility.[5] *Cf., Commonwealth v. Comer, supra,* note 2.

The failure to limit appellant's cross-examination to actual convictions was prejudicial error since the impermissible cross-examination suggested that appellant had a long and varied history of criminal activity and it permitted the use of legally irrelevant and highly suggestive evidence to impeach appellant in a trial in which credibility had a critical bearing on the verdict.

The judgment of the court below is reversed and the case is remanded for a new trial.

—————

DISSENTING OPINION BY WRIGHT, P. J.:

I would affirm the judgment of sentence. Although a few questions on cross-examination may have been technically improper,[1] no objection was made at the time and the record clearly indicates that the matter was not sufficiently prejudicial to require the grant of a new trial. Cf. *Commonwealth v. Comer,* 167 Pa. Superior Ct. 537, 76 A. 2d 233.

WATKINS and HANNUM, JJ., join in this dissenting opinion.

—————

[5] The Commonwealth argues that due to appellant's failure to take exception to the charge, this Court cannot consider possible errors in the charge. Even if this is correct, errors in the charge which may have influenced prejudicial use of the cross-examination may be considered in determining whether the cross-examination was harmless error.

[1] Our Supreme Court has now ruled in *Commonwealth v. Smith,* 432 Pa. 517, 248 A. 2d 24, filed November 27, 1968, that it is proper to question a defendant, who places his character in issue, concerning prior arrests which did not result in convictions.